STATE of Wisconsin, Plaintiff-Respondent,

v.

Frank PANNO, individually, Anita Panno, individually, Robert M. Burns, individually, and others whose identities are currently unknown, d/b/a Odyssey Adult Book Store, 9720 120th Avenue, Kenosha, Wisconsin, Defendants-Appellants.

Court of Appeals

*No. 88–1419. Submitted on briefs May 22, 1989.—Decided August 16, 1989.*

(Also reported in 447 N.W.2d 74.)

On behalf of the defendants-appellants, the cause was submitted on the brief of *Michael Null* of Chicago, Illinois.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Richard Alan Ginkowski,* assistant district attorney, Kenosha.

Before Brown, P.J., Scott and Nettesheim, JJ.

NETTESHEIM, J.   Robert Burns, proprietor of the Odyssey Adult Book Store, and Frank Panno and Anita Panno, owners of the property upon which the store is located (collectively Odyssey), appeal from a judgment enjoining operation of the bookstore for one year. The injunction is premised upon the finding that Odyssey is a public nuisance, contrary to secs. 823.09 and 823.10, Stats. Odyssey raises two arguments:   (1) fourth-degree sexual assaults which occurred on the bookstore premises do not constitute offenses of "lewdness" within the meaning of sec. 823.10; and (2) the closure judgment violates federal and state free speech rights because no evidence established knowledge of Odyssey's representatives or employees of the lewd acts occurring on the premises. Odyssey also argues that the one-year closure judgment was too broad. We reject Odyssey's arguments and affirm the judgment.

The Odyssey Adult Book Store displays, rents and sells sexually explicit magazines, books, films, videos and related paraphernalia. Thirty-four private booths are also available on the premises for the viewing of sexually explicit movies. Customers had drilled holes between the walls of several of the booths, through which the interior of the neighboring booth could be seen and accessed.

During 1987, undercover police officers made several arrests at Odyssey for lewd and lascivious conduct pursuant to sec. 944.20(2), Stats., and fourth-degree sex-

822

ual assault, pursuant to sec. 940.225(3m), Stats. In March of 1988, seven of these arrests resulted in convictions under these two statutes. In six instances of fourth-degree sexual assault, each defendant had entered a movie booth occupied by an undercover officer and without that officer's consent had grabbed, touched or rubbed the officer's genitals through his clothing. The one conviction for lewd and lascivious conduct was based on the defendant's action of inserting his exposed penis through the hole in the wall between his movie booth and the police officer's adjacent booth.

Within sixty days of these convictions, the state issued a summons and complaint alleging that the bookstore was a nuisance and requesting the court to enjoin its operation under secs. 823.09 and 823.10, Stats. The case was tried to the court without a jury. The undercover officers testified to the acts of sexual assault and lewdness they observed. On cross-examination of the officers Odyssey attempted to show entrapment. Odyssey also presented testimony by the proprietor, Burns, that neither he, nor Odyssey's employees, knew about the conduct which led to the arrests and convictions. Furthermore, Burns testified that he had posted signs warning against illicit sexual activity and had alerted Odyssey's employees to be on the lookout for this type of activity.

On July 25, 1988, the trial court issued its findings of fact, conclusions of law and judgment. The court concluded that fourth-degree sexual assault and lewd and lascivious conduct, contrary to secs. 940.225(3m) and 944.20(2), Stats., respectively, constituted offenses of "lewdness" within the meaning of the nuisance statute, sec. 823.10, Stats. The court then found the seven convictions for this conduct to be sufficient proof of a nuisance *per se* under sec. 823.10, and enjoined Odyssey,

pursuant to sec. 823.09, Stats., from operating the bookstore for a period of one year. The court further ordered that the furniture, fixtures and other movable property used in connection with the video exhibitions be sold pursuant to sec. 823.13, Stats. The court, however, permitted Odyssey to remove the literature and other items from the sales area of the store and stayed the property sale provisions of the judgment pending appeal.

On appeal, Odyssey first argues that the trial court erred when it found that the convictions for fourth-degree sexual assault constituted offenses of "lewdness" under the nuisance statute, sec. 823.10, Stats. The statute reads in relevant part:

> The conviction of any person, of the offense of lewdness, assignation or prostitution committed in the building or part of a building, erection or place shall be sufficient proof of the existence of a nuisance in the building or part of a building, erection or place, in an action for abatement commenced within 60 days after the conviction.

*Id.* Odyssey argues that because "lewdness, assignation or prostitution" are specific crimes under the Wisconsin criminal code, secs. 944.20 and 944.30, Stats., the legislature intended to limit proof under the nuisance statute to instances in which convictions had been obtained under those statutes. We reject this narrow reading of sec. 823.10.

Interpretation of a statute presents a question of law. *L & W Constr. Co. v. Wisconsin Dep't of Revenue,* 149 Wis. 2d 684, 688, 439 N.W.2d 619, 620 (Ct. App. 1989). In construing sec. 823.10, Stats., we are to give effect to the intent of the legislature. *See L & W Constr.,* 149 Wis. 2d at 689, 439 N.W.2d at 620. We must ascer-

tain that intent by first looking to the language of the statute itself and giving the language its ordinary and accepted meaning. *Id.* That meaning may be ascertained from a recognized dictionary. *State v. Lubotsky,* 148 Wis. 2d 435, 438, 434 N.W.2d 859, 861 (Ct. App. 1988).

Section 823.10, Stats., clearly states that a conviction for "the offense of lewdness" is sufficient proof of the existence of a nuisance. If the legislature, as Odyssey suggests, had intended to limit proof under this statute to convictions pursuant to the lewd and lascivious statute, sec. 944.20, Stats., it would have so stated in the nuisance statute. The legislature, however, chose to use the broader phrase, "offense of lewdness."

This court has recently held that the ordinary and accepted meaning of the word "lewd" is as follows: (1) "inclined to, characterized by, or inciting to lust or lechery," *Lubotsky,* 148 Wis. 2d at 438, 434 N.W.2d at 861; (2) "obscene or indecent as language, songs, etc.," *id.;* (3) "inciting to sensual desire or imagination," *id.* at 438–39, 434 N.W.2d at 861 (citing *Webster's Third New International Dictionary* 1301 (1976)).

Conviction for fourth-degree sexual assault pursuant to sec. 940.225(3m), Stats., requires proof that the defendant had sexual contact with a person without the consent of that person. "Sexual contact" is defined as follows:

> [A]ny intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading; or for the purpose of sexually humiliating the complainant or *sexually arousing or gratifying* the defendant or if the touching contains the elements of actual or attempted battery under s. 940.19(1).

Sec. 940.225(5)(b) (emphasis added).

By definition, fourth-degree sexual assault can be characterized by the *Lubotsky* factors of lust or lechery. *Lubotsky,* 148 Wis. 2d at 438–39, 434 N.W.2d at 861. We conclude that the trial court properly found that fourth-degree sexual assault contrary to sec. 940.225(3m), Stats., constitutes an "offense of lewdness" within the meaning of sec. 823.10, Stats.

Odyssey next argues that its first amendment rights were violated by the closure judgment. It contends that a bookstore which sells and displays materials presumptively protected by the First Amendment to the United States Constitution and similar provisions of the Wisconsin Constitution cannot be enjoined as a nuisance on the basis of convictions for lewd conduct, without a showing that its representatives or agents had knowledge of the conduct. Odyssey also argues that its first amendment rights were violated because the closure judgment, which enjoined the entire bookstore operation for a period of one year, was too broad. We will address each of these constitutional challenges in turn.

Odyssey argues that because its agents had no knowledge or notice of the nuisance, the closing impinged on the free speech guarantees of the state and federal constitutions and was an impermissible prior restraint of protected expression. We disagree. None of the authorities cited by Odyssey holds that proof of knowledge or notice is constitutionally required when closure of an adult bookstore is sought on the grounds that activity within the bookstore constitutes a nuisance. Rather, the courts which have addressed the knowledge issue did so on statutory grounds. *See People v. Schoonmaker,* 216 N.W. 456, 457 (Mich. 1927); *State ex rel. Haas v. Club Recreation & Pleasure,* 599 P.2d

1194, 1199, 1200 (Or. Ct. App. 1979), *cert. denied,* 446 U.S. 982 (1980).

We view the issue of whether knowledge or notice must be shown in order to establish a nuisance as a question of statutory interpretation. This is a question of law which we decide without deference to the trial court's decision. *L & W Constr.,* 149 Wis. 2d at 688–89, 439 N.W.2d at 620.

Odyssey was closed under the Wisconsin nuisance statutes, secs. 823.09 and 823.10, Stats. These statutes read in pertinent part:

> **823.09   Bawdyhouses declared nuisances.** Whoever shall erect, establish, continue, maintain, use, occupy or lease any building or part of building . . . to be used for the purpose of lewdness . . . or permit the same to be used, in the state of Wisconsin, shall be guilty of a nuisance and the building . . . in or upon which such lewdness . . . is conducted, permitted, carried on, continued or exists, and the furniture, fixtures, musical instruments and contents used therewith for the same purpose are declared a nuisance, and shall be enjoined and abated.
>
> **823.10   Disorderly house, action for abatement.** If a nuisance, as defined in s. 823.09, exists the district attorney or any citizen of the county may maintain an action in the circuit court in the name of the state to abate the nuisance and to perpetually enjoin every person guilty thereof from continuing, maintaining or permitting the nuisance . . .. The conviction of any person, of the offense of lewdness, assignation or prostitution committed in the building or part of a building, erection or place shall be sufficient proof of the existence of a nuisance in the building or part of a building, erection or place

in an action commenced within 60 days after the conviction.

■

In construing secs. 823.09 and 823.10, Stats., we must give effect to the intent of the legislature. *See L & W Constr.,* 149 Wis. 2d at 689, 439 N.W.2d at 620. We must ascertain that intent by first looking to the language of the statute itself and giving the language its ordinary and accepted meaning. *Id.*

■

Under secs. 823.09 and 823.10, Stats., a finding of nuisance is not limited to situations in which the owner had knowledge of the nuisance. Among other methods of proof, the legislature has provided that the conviction of a person for the offense of lewdness, assignation or prostitution committed on the premises is alone sufficient proof of a nuisance. Sec. 823.10. Thus, the legislature, through this language, has defined one type of nuisance without any element of knowledge. If sufficient proof of such convictions is presented, proof of a nuisance is established and the court may, in its discretion, issue an injunction.

■

In this case, the trial court relied on the six convictions for fourth-degree sexual assault and the one conviction for lewd and lascivious conduct in making the finding that the bookstore was a nuisance. As we concluded earlier, the court properly found that these convictions were for "the offense of lewdness," pursuant to sec. 823.10, Stats.[1] Therefore, the convictions properly formed the basis for the court's conclusion that the

---

[1]Although Odyssey implied that the convictions resulted from entrapment, it introduced no evidence to dispute the validity of these convictions.

828

activities on the Odyssey premises were a nuisance. *See* sec. 823.10.[2]

Odyssey cites to a Michigan Supreme Court case in which Michigan's nuisance statute was read to permit abatement of a nuisance only when the owner had knowledge of the nuisance. *Schoonmaker,* 216 N.W. at 457. Even if Michigan's nuisance statute were similar to ours, we would not resort to outside sources in interpreting our nuisance statute since the language of our statute is clear and unambiguous. *See Sharon Interstate Grain, Inc. v. Town of Sharon,* 148 Wis. 2d 780, 786, 436 N.W.2d 887, 890 (Ct. App. 1989).[3]

Last, Odyssey complains that the one-year closure judgment of the entire bookstore was too broad and violated federal and state free speech rights to sell books on the premises. Odyssey argues that the Wisconsin Constitution requires the least restrictive means of abating the nuisance and a showing that other sanctions besides closure, such as arresting the offenders or injunctive relief, have proved unavailing. *See People ex rel. Arcara v.*

---

[2]Odyssey contends that under our interpretation of secs. 823.09 and 823.10, Stats., the most prestigious hotel in the state could be enjoined as a nuisance if one conviction for an act of prostitution occurring in one room were shown, despite the fact that neither the owner nor his or her agents had permitted or encouraged the act. We decline, however, to address the issue presented in this case based on these hypothetical facts. *See Pension Management, Inc. v. DuRose,* 58 Wis. 2d 122, 128, 205 N.W.2d 553, 555-56 (1973).

[3]Since we have concluded that proof of actual knowledge was not required under the facts of this case, we need not address the state's alternative argument that the evidence nonetheless established such knowledge.

*Cloud Books, Inc.,* 503 N.E.2d 492, 495 (N.Y. 1986) (*Arcara II*).

The United States Supreme Court has declined to apply first amendment or "least restrictive means" scrutiny to closure sanctions imposed upon adult bookstores for a nuisance. *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 706–07 (1986) (*Arcara I*). In *Arcara I,* the Supreme Court held that the closure legislation was directed at the unlawful conduct—not the books or other expressive activity. *Id.* at 707. Book selling in an establishment used for prostitution does not confer first amendment coverage to defeat valid legislation aimed at penalizing and terminating illegal use of the premises. *Id.*

On remand, the New York Court of Appeals gave broader protection to freedom of expression guarantees under the New York Constitution than those granted by the Supreme Court under the federal constitution in *Arcara I. Arcara II,* 503 N.E.2d at 494–95. The New York court held that its state constitutional guarantee of freedom of expression is implicated by an order closing a bookstore to prevent illegal acts by the patrons of the store. *Id.* at 495. The court concluded that the state, when seeking to close a bookstore on the basis of nuisance, must prove that it has chosen the least restrictive means of abating the nuisance. *Id.*

Odyssey urges us to follow *Arcara II* because Wisconsin's free speech provision, Wis. Const. art. I, sec. 3, parallels New York's. *Jacobs v. Major,* 132 Wis. 2d 82, 101, 390 N.W.2d 86, 92 (Ct. App. 1986), *modified and aff'd in part, rev'd in part on other grounds,* 139 Wis. 2d 492, 407 N.W.2d 832 (1987). In *Jacobs,* this court gave "great weight" to the New York court's construction of its free speech constitutional provision in deciding whether the Wisconsin Constitution secures the right to free speech against private infringements. *Id.* at 101, 390

N.W.2d at 92. Odyssey argues that *Jacobs* instructs that we should follow New York's lead in interpreting our constitution. We disagree.

Although we accorded "great weight" to New York's interpretation of its constitution in *Jacobs,* our deference was not ironclad. "[W]e should not adopt New York's construction of its own constitution if we conclude that the better rule would be a different construction." *Id.* Here, we conclude that the better rule is that the free speech guarantees of the Wisconsin Constitution and the "least restrictive means" scrutiny do not extend to closure sanctions imposed against a bookstore on nuisance grounds. We deem the Supreme Court's reasoning in *Arcara I* more persuasive.

> [T]he sexual activity carried on in this case manifests absolutely no element of protected expression. In *Paris Adult Theatre I v. Slaton,* 413 US 49, 67, 37 L Ed 2d 446, 93 S Ct 2628 (1973), we underscored the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct. First Amendment values may not be invoked by merely linking the words "sex" and "books."

*Arcara I,* 478 U.S. at 705.

In this case, the unlawful sexual activity was committed on the premises of a public bookstore. That activity had nothing to do with the sale or display of sexually explicit—and constitutionally protected—materials also in the bookstore. The one-year closure of the entire bookstore, although clearly burdening Odyssey, does not preclude the sale of the same materials at another location. As the Supreme Court pointed out in *Arcara I,*

831

"every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities. One liable for a civil damages award has less money to spend on paid political announcements or to contribute to political causes, yet no one would suggest that such liability gives rise to a valid First Amendment claim." *Id.* at 706. Such is the case here. We conclude that the one-year closure judgment under the Wisconsin nuisance statutes does not implicate Odyssey's federal and state free speech rights. Accordingly, we affirm the judgment of the trial court.[4]

*By the Court.*—Judgment affirmed.

[4]Odyssey also raises an issue couched in terms of due process, which it neither briefs nor argues. Constitutional issues merely raised but not argued will not be reviewed. *Dumas v. State,* 90 Wis. 2d 518, 523, 280 N.W.2d 310, 313 (Ct. App. 1979).